| | | |
|---|---|---|
| JIMMY and REGINA HULL, | ) | |
| individually and on behalf of those | ) | |
| similarly situated, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 12-2086-JAR-DJW |
| | ) | |
| v. | ) | |
| | ) | |
| VIEGA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This Federal Rule of Civil Procedure 23 class action arises out of the installation of allegedly defective high-zinc-content "yellow brass" plumbing fittings in residences throughout the Las Vegas area. This matter is before the Court on Defendants' Motion to Dismiss and Strike Pursuant to Fed. R. Civ. P. 12(b)(1), (6), (f) and 23 (Doc. 10). For the reasons explained in detail below, the Court denies Defendants' motions without prejudice to renew.

## I.     Procedural and Factual Background

Plaintiffs Jimmy and Regina Hull, Gilbert Meyer, Dorothy O'Brien, and Daniel Tessier, all residents of Nevada and owners of residential property in Las Vegas, have filed the present Rule 23 class action, individually and on behalf of over one thousand (1000) similarly situated owners of homes and buildings in the United States with plumbing systems utilizing Defendants' brass ASTM F877 and/or F1807 fittings (collectively "Fittings"), as well as any person or entity who paid for repairs or damage cause by the failure of the allegedly defective Fittings. Plaintiffs seek damages pursuant to the Kansas and Nevada Deceptive Trade Practices Act ("NDTPA")

and similar statutes in other states, and Chapter 40 of the Nevada Revised Statutes ("NRS")[1] based upon damage and potential future damage to class members' homes arising out of the failure or potential failure of "yellow brass" plumbing fittings and components manufactured by Defendants.

Plaintiff names the following Defendants: (1) Vanguard Piping Systems, Inc., a Kansas corporation , which was succeeded by and merged with Viega, LLC; (2) Viega, Inc., a Delaware corporation that is the successor-in-interest by merger to Vanguard Industries, Inc. and Vanguard Piping Systems, Inc.; (3) Viega, LLC, a Delaware limited liability company that is the successor-in-interest by merger to Vanguard Piping Systems, Inc.; (4) VG Pipe, LLC, a Delaware corporation; (5) Vanguard Industries, Inc., the parent of Vanguard Piping Systems, Inc. before it was merged with and sold to Viega, Inc.; (6) Viega International GMBH, a German company that is the parent company of Viega, Inc.; and (7) Viega GMBH & Co. KG, a German company.[2]

The Complaint lists seven causes of action: (1) Breach of Implied Warranties of Fitness for Particular Purpose, Merchantability, Habitability, Quality and Workmanship; (2) Breach of Express Warranties; (3) Negligence, Negligent Misrepresentation, Failure to Warn/Instruct, Negligent Selection and Negligent Installation; (4) Strict Products Liability; (5) Declaratory and Equitable Relief; (6) Violation of NDTPA; and (7) Alter Ego.

Defendants move to dismiss the complaint on multiple grounds, including: (1) Plaintiffs'

---

[1]Nevada law provides an exception to the economic loss doctrine for construction defect negligence claims where they are initiated under Chapter 40 of the NRS, which requires a claimant to provide written notice of the defects with an opportunity for potential defendants to inspect and repair. *See Olson v. Richard*, 120 Nev. 240, 243 (2004).

[2]Defendant Vanguard Industries, Inc., which was served in this matter in June 2012 following the Court's Order to Show Cause, seeks leave to file its motion to dismiss and strike out of time and join the other defendants in their motion to dismiss and strike (Docs. 43, 44).

lack of standing for failure to show an "injury in fact"; (2) multiple challenges to Plaintiffs'

express and implied warranty claims; (3) failure to plead the required elements of the NDTPA;

(4) the economic loss doctrine precludes Plaintiffs' negligence and strict liability claims; (5)

Plaintiffs failed to comply with Nevada statutory "Chapter 40" prefiling notice of a construction

defect; (6) Plaintiffs' strict liability claim fails because Nevada state law states that homes are

not "products"; (7) Plaintiffs fail to define what duty applies to Defendants, who did not select or

install any components in any home; (8) Plaintiffs fail to allege the elements of

misrepresentation; (9) Plaintiffs cannot bring a declaratory relief class action because this is an

action for money damages and they cannot meet the requirements of the Declaratory Relief Act;

and (10) Plaintiffs' alter ego claim is not a stand-alone cause of action.

Defendants also move to strike Plaintiffs' class allegations on the grounds that it is

evident from the face of the Complaint that, as a matter of law, Plaintiffs are unable to satisfy the

requirements for certification under Rule 23. Specifically, Defendants allege the case would be

unmanageable, Nevada's Chapter 40 cannot apply nationwide and conflicts with the economic

loss doctrine applicable to similar claims in other jurisdictions, and the class in not ascertainable

because its description is vague and overinclusive.

In their response, Plaintiffs contend that Defendants'standing argument fails to address

Plaintiffs' claims for declaratory and injunctive relief and ignores allegations in the Complaint

setting forth specific damages. Plaintiffs assert that the Complaint adequately alleges all causes

of action and that it is premature to engage in any analysis of the class certification issue at this

early juncture. Plaintiffs also acknowledge that Plaintiffs Meyer, O'Brien and Tessier are class

members in a separate case filed in the District of Nevada, brought on these same claims against

these same Defendants, brought by the same Plaintiffs' counsel: *Waterfall Homeowners Ass'n v.*

*Viega, Inc., et al.*, No. 11-cv-01498-RCJ-GWF ("*Waterfall*"). In that case, the plaintiffs are

Nevada homeowners associations that represent their own 998 members directly, but seek to

represent up to 10,000 homeowners associations representing up to 250,000 similarly situated

homeowner members through out the Las Vegas area via that class action.[3]

On July 10, 2012, after Plaintiffs filed their response but before Defendants filed their

reply, the *Waterfall* court issued an order adjudicating motions to dismiss and strike class action

allegations filed by Defendants (the "*Waterfall* Order"). Defendants attach a copy of the Order

to their response, and incorporate it into their arguments.[4] Although the *Waterfall* court denied

Defendants' motion to strike class allegations as premature, it expressed doubt that plaintiffs

could obtain certification under Rule 23(b)(3) under present circumstances, as there will be

> a very difficult hurdle for Plaintiffs to leap in showing that
> common issues predominate, because they seek to represent
> thousands of associations, each of which must send its own
> Chapter 40 notice. The individual facts of whether particular
> associations complied with Chapter 40 notice, inspection, and
> opportunity-to-repair requirements are likely to overwhelm the
> common issues of law. The Court will leave this issue to later
> motions practice, however.[5]

The court also granted in part Defendants' motion to dismiss, dismissing several of the plaintiffs'

claims with leave to amend, specifically the claims for breach of the implied warranty of

merchantability, breach of express warranty, negligent selection and installation, negligent

---

[3]On February 8, 2013, two additional class action suits brought by Nevada homeowners associations in the separate District of Nevada case *Slaughter v. Uponor*, No. 08-cv-01223, were severed from that case and consolidated with *Waterfall*. Case No. 11-cv-01498-RCJ-GWF, Doc. 131.

[4]Doc. 38, Ex. A.

[5]*Id*. at 11.

misrepresentation and failure to warn, and violation of NDTPA. The court dismissed the claim

for strict liability, without leave to amend, and found that the claims for negligence per se,

declaratory and equitable relief, and alter ego are not independently actionable causes of action.

The court denied Defendants' motion to dismiss for lack of standing, holding that plaintiffs

alleged actual damage, specifically, that the parts are defective and have begun to corrode even if

they have not yet failed, but that the plaintiffs would have to join individual homeowners as

named plaintiffs, and identify individual homeowners, not other associations, as putative class

members to support Article III standing.[6] The court also denied the motion to dismiss based

upon an improper Chapter 40 notice, because the question was too fact-intensive to be

determined before summary judgment.[7]

Not surprisingly, Defendants filed a reply urging this Court to follow the favorable

rulings in the *Waterfall* Order, and seek dismissal of Plaintiffs Meyer, O'Brien and Tessier,

whose presence in this suit allegedly violates the anti-claim splitting rule.[8] Defendants also

attempt to distinguish the *Waterfall* court's ruling on striking class allegations because the

putative class is limited to Nevada residents, and urge the Court to disregard its holding on

standing as erroneous. Plaintiffs did not seek leave to file a surreply.

---

[6]*Id*. at 14. The court also dismissed the claims against the Uponor defendants for violation of the anti-claim-splitting rule, and on reconsideration, the court severed plaintiffs' claims against defendants Centex and Interstate for consolidation into the District of Nevada case *Slaughter v. Uponor*, No. 08-cv-01223.

[7]*Id*. at 17-18.

[8]*See Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) (Explaining "[t]he rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'") (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)). Further, claim-splitting analysis does not require there to be a final judgment on the merits in order for the doctrine to apply. *Id*. at 1218.

**II.      Discussion**

Defendants raise twenty questions under four separate sections of Rule 12(b) in their

relatively brief memorandum in support of their motion to dismiss, ranging from lack of standing

to failure to plead essential elements.  Taking a "scorched earth approach," Defendants' analysis

is multi-layered and often dismissive, requiring the Court's independent research on issues and

elements involving Nevada case law and statutes.[9]  In their reply, Defendants for the first time

seek application of the rulings in the *Waterfall* Order, to which Plaintiffs did not have the benefit

of responding, and raising the new issue of violation of the anti-claim-splitting doctrine.

Although the *Waterfall* court dismissed several of the plaintiffs' claims on grounds similar to

those raised by Defendants in this case, it did so with leave to amend the complaint.  Conversely,

although Defendants' motion to strike class allegations raises legitimate concerns about whether

Plaintiffs can ever meet the certification requirements of Rule 23(b)(3), Plaintiffs only generally

oppose the motion as disfavored and premature, asking instead that the issues raised by

Defendants be deferred until after discovery.

In light of the above, the Court finds that the posture of the parties' respective

submissions, coupled with the intervening *Waterfall* Order, compels denial of Defendants'

motions, without prejudice to renew.  The Court is particularly concerned with the issues raised

in Defendants' motion to strike class action allegations.  Although Plaintiffs have not yet moved

for class certification,[10] Fed. R. Civ. P. 23(d)(1)(D) expressly authorizes a motion to strike class

---

[9]For example, Defendants seek dismissal of the construction defect claims on three grounds, one with four sub-parts.  Doc. 11 at 6.

[10]Under Fed. R. Civ. P. 23, class certification will only be appropriate if the court is satisfied, after a rigorous analysis, that (1) all four general class action prerequisites of Rule 23(a) are met, and (2) that the action is maintainable under one of the three categories set forth in Rule 23(b).

action allegations by authorizing the court to issue an order "requiring that the pleadings be amended to eliminate allegations about representation of absent persons. . . ."[11]  The Supreme Court has endorsed a critical examination of class allegations at the pleading stage, stating that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim."[12]  Significantly, several courts have recently stricken class allegations on the pleadings in putative nationwide consumer class action cases where, as alleged in this case, manageability, choice of law, and acertainability issues would prevent certification.[13]

After reviewing the parties' submissions, the Court has concerns about whether Plaintiffs can *ever* meet the certification requirements of Rule 23(b)(3), which states in relevant part:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>   . . .
>
> (3) the court finds that the questions of law or fact common to

---

[11]Fed. R. Civ. P. 23(d)(1)(D); *cf*. Fed. R. Civ. P. 12(f) ("the court may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter"); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (noting that Rule 23 authorizes courts to use motions to strike to test the viability of a class at the earliest pleading stage of the litigation).

[12]*Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

[13]*See, e.g.*, *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949-50 (6th Cir. 2011) (ruling that district court may strike class allegations prior to discovery when discovery will not "alter the central defect in th[e] class claim. . . . [which was] governed by . . . a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, on that generally will preclude class certification"); *Rikos v. Procter & Gamble, Co.*, No. 1:11-cv-226, 2012 WL 641946, at *4 (S.D. Ohio Feb. 28, 2012) (striking class allegations in consumer action because a "nationwide class of all Align purchasers is inappropriate because the [California] CLRA and the UCL cannot be constitutionally applied to the claims of class members who neither reside in California nor purchased the product there"); *In re Yasmin & Yaz (Dorspirenone) Mktg.*, 275 F.R.D. 270, 276 (S.D. Ill. 2011) (granting defendants' motion to strike class allegations because "it is evident that individual questions of law and fact predominate, and therefore the case is not manageable as a nationwide or statewide class action'); *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (striking class action allegations where "the class is not ascertainable because it includes members who have not experienced any problems with their iMac display screens").

> class members predominate over any questions affecting only
> individual members, and that a class action is superior to other
> available methods for fairly and efficiently adjudicating the
> controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions; (B) the extent and
> nature of any litigation concerning the controversy already begun
> by or against class members; (C) the desirability or undesirability
> of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.[14]

Specifically, certification under Rule 23(b)(3) seems unlikely because the variances in

the states' laws governing each plaintiff's claims create manageability concerns that can render

class certification inappropriate. Because Kansas' choice of law rules utilizes the *lex loci* test, it

appears that certification of a national class would require this Court to apply the laws of all 50

states to each respective plaintiff's claim.[15] This issue is further compounded by Plaintiffs'

purported attempt to apply Nevada negligence and strict liability law nationwide through

Chapter 40, which Defendants assert is limited to Nevada homeowners. Because many putative

class members are not Nevada homeowners and thus have no claims under Chapter 40, the Court

would be forced to apply each state's negligence and strict liability laws and to determine

whether the economic loss doctrine of each state bars such claims. Moreover, Defendants argue

that Plaintiffs improperly attempt to apply the NDTPA nationwide, and allege there appear to be

substantial conflicts between the consumer fraud laws of Kansas and other states. Further,

Defendants take issue with Plaintiffs' attempt to extrapolate the Hulls' Chapter 40 Notice to the

class homes in Nevada, much less nationwide. And finally, Defendants argue that the class is

---

[14]Fed. R. Civ. P. 23(b).

[15]*Boyd Rosene & Assoc., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352-53 (10th Cir. 1997); *Dragon v. Vanguard Indus., Inc.*, 89 P.3d 908, 917 ( Kan. 2004).

not acertainable, as it includes putative plaintiffs with latent or unmanifested defects that would require proof of injury on an individualized basis, and because it includes members without a claim under Chapter 40.

Plaintiffs generally oppose Defendants' motion to strike as disfavored and premature, asking instead theat the issues raised by Defendants be deferred until after discovery. Plaintiffs' response fails to address key issues raised by Defendants, instead responding that "they may choose to limit the class to a more finite scope," and that they could "request subclasses to accommodate variances in state laws." Plaintiffs dismiss the choice of law issues related to a nationwide class as ones that simply "could also be resolved prior to briefing class certification," but offer no insight as to how these issues can be resolved. Further, Plaintiffs' examples of other recently certified nationwide plumbing system classes involved settlement classes, which did not address issues of manageability.

Plaintiffs contend that they should be permitted to engage in class discovery and move for class certification, at which time Defendants can make the arguments they raise herein. Plaintiffs fail to address, however, that a motion to strike is procedurally permissible, particularly in light of the nature of this lawsuit. Moreover, there does not appear to be any amount of discovery that could remedy the choice-of-law problems identified by Defendants. Although the Court has the authority to strike the class allegations at this time, it is also mindful of its obligation to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met. Because Plaintiffs' response goes only to the timing, not the substance of Defendants' motion to strike, it follows that the Court's analysis would be less than rigorous without additional briefing

on the class certification issues.[16]

Further, many of the Rule 12(b) issues raised by Defendants appear to be curable by amending the Complaint, as explained by the *Waterfall* court.  In addition, the parties will need to address the newly-alleged claim-splitting allegations. Accordingly, because it possesses broad discretion to control proceedings and frame issues for class certification consideration under Fed. R. Civ. P. 23,[17] the Court denies Defendants' motions without prejudice to renew, giving Plaintiff the opportunity to address the substance of the issues with the benefit of both the Court's inclination to address the motion to strike class allegations at this early stage of the proceedings, as well as the analysis and rulings in the *Waterfall* Order.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss and Motion to Strike class action allegations (Doc. 10) are DENIED without prejudice to renew within thirty (30) days of this Order;

**IT IS FURTHER ORDERED** that Defendant Vanguard Industries, Inc.'s Motion to file out of time and Motion for Joinder (Docs. 43, 44) are DENIED as moot.

**IT IS SO ORDERED.**

Dated: February 27, 2013

S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE

---

[16]*See Smith v. Merial Ltd.*, Nos. 10-439, 10-442, 10-1050, 10-1391, 10-6372, 11-6976, 2012 WL 2020361, at *3-7 (D. N. J. June 5, 2012) (adopting similar approach requiring additional briefing on conflict of law issues raised in motion to strike class action allegations in putative nationwide consumer class action involving flea and tick prevention products for pets).

[17]*See Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997).