## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Jimmy and Regina Hull on behalf of those similarly situated, et al., <br><br>                Plaintiffs,<br> v.<br> VIEGA, INC., et al.,<br><br>                Defendants. | CASE NO.: 12-CV-2086 JAR/DJW |

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE PURSUANT TO FRCP 12(b)(1), 12(b)(6), 12(f) AND 23 AND MOTION FOR LEAVE TO SUBSTITUTE PLAINTIFF AND AMEND COMPLAINT

Robert A. Horn (KS Bar # 70254)
Joseph A. Kronawitter (KD Bar # 19665)
HORN, AYLWARD & BANDY, LLC
2600 Grand Boulevard, Suite 1100
Kansas City, Missouri 64108
Tel. (816) 421-0700
Fax (816) 421-0899

James D. Carraway
(Cal. Bar 143592 & Nev. Bar # 7642)
CARRAWAY & ASSOCIATES, LLC
7674 W. Lake Mead Blvd., Suite 215
Las Vegas, Nevada 89128
Tel. (702) 632-1580
Fax. (702) 632-1581

J. Randall Jones (Nev. Bar # 1927)
KEMP, JONES & COULTHARD, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Tel. (702) 385-600
Fax (702) 385-6001

Robert C. Maddox (Nev. Bar# 4002)
MADDOX, ISAACSON & CISNEROS, LLP
3811 West Charleston Blvd., #110
Las Vegas, Nevada 89102
Tel. (702) 366-1900

Scot K. Canepa (Nev. Bar # 4556)
CANEPA RIEDY & RUBINO
851 South Rampart Blvd. #160
Las Vegas, Nevada 89145
Tel. (702) 304-2335
Fax (702) 304-2336

Francis I. Lynch (Nev. Bar # 4515)
LYNCH, HOPPER, SALZANO & SMITH, LLP
1641 Alta Drive, #11
Las Vegas, Nevada 89106
Tel. (702) 868-1115
Fax. (415) 555-1212

**ATTORNEYS FOR PLAINTIFFS**

i

On February 27, 2013, the Court denied Defendants' prior motion to dismiss, allowing Defendants leave to renew their motion in thirty days.[1] The Court's February 27, 2013 Order did not allow Plaintiffs leave to amend their complaint.

On March 29, 2013, Defendants renewed their motion to dismiss, asserting a host of reasons why, they contend, Plaintiffs' complaint should be dismissed. Defendants argue that Plaintiffs' complaint is too expansive. They argue that Plaintiffs' complaint is not sufficiently detailed. They argue that the proposed class representatives are improperly splitting their claims. In essence, Defendants attack the named plaintiffs and the Nevada law under which they have plead their claims.

There are legitimate responses to many of Defendants' concerns, as this Court noted in its order denying Defendants' prior motion to dismiss.[2] However, rather than continue battling with Defendants over the correct form of the pleadings, Plaintiffs desire that the litigation move forward substantively in order to procure relief for some of the putative class members. At least one jury has already found that: Defendants' brass plumbing fittings suffer a construction defect; Defendants breached implied warranties of merchantability and fitness by selling those fittings, and Defendants' defective fittings were the proximate cause of substantial damages to homeowners.[3] Plaintiffs believe that such damages to putative class members will only increase the longer Defendants are allowed to delay and protract this case from reaching adjudication on the merits.

Therefore, Plaintiffs desire to substitute a replacement named plaintiff and proposed class representative, as set forth in more detail below. That substitution, if allowed, will resolve many of Defendants' concerns about the current complaint. The substitute plaintiff, David Salverson,

---

[1] Doc. # 48.
[2] *Id.* at 10.
[3] *See* Request to Take Judicial Notice filed contemporaneously herewith.

desires to pursue claims only on behalf of some Arizona residents.[4]  Narrowing the complaint in this manner will resolve the vast majority, if not all, of Defendants' remaining concerns set forth in their motion to dismiss.[5]

## I.    RESPONSE TO MOTION TO STRIKE CLASS ALLEGATIONS

Defendants raised the following points in relation to their motion to strike the class allegations in Plaintiffs' complaint:

- Can manageability requirements be met when a class action requires the application of each of the fifty states' consumer fraud and construction defect statutes, negligence, strict liability, breach of warranty, and implied warranty laws?

- Can plaintiffs' single-home inspection report be used to 'extrapolate' notice for a nationwide class action brought under Nevada's construction defect statute?

- Does plaintiffs' proposed class meet ascertainability requirements, even though it is overbroad in a number of different ways?[6]

All three of these issues are resolved through the proposed amended complaint. The amended complaint: involves the law of only one state, not fifty states; does not involve a claim under Nevada's construction defect statute, and involves a substantially narrowed class that involves residents from a few southern Arizona counties.[7]

And to the extent there are any other unresolved issues related to whether Plaintiffs can obtain class certification, those questions are best reserved for the appropriate stage when the parties actually brief the issue of class certification. As the United States Supreme Court recently

---

[4] *See* proposed Amended Complaint, Exhibit A hereto, ¶ 22-23.
[5] Plaintiffs, and proposed substitute plaintiff David Salverson, understand that Defendants will probably continue to allege defects in Mr. Salverson's substantially narrowed proposed amended complaint, but those arguments can be addressed as the case moves forward in discovery. Alternatively, if Defendants desire to file another motion to dismiss, or supplement their existing motion to dismiss, to address the proposed amended complaint, Plaintiffs do not object to that procedure.
[6] Defendants' Motion, Doc. # 53, pg. 3.
[7] Exh. A, ¶ 22-23.

2

confirmed in *Wal-Mart Stores, Inc. v. Dukes*,[8] Federal Rule of Civil Procedure 23 "does not set forth a mere pleading standard."[9]  Rather, it necessitates an examination of the case. Accordingly, Plaintiffs should be allowed an opportunity to fully brief the issue of class certification and gather evidence to support that analysis. Summarily determining that a case can never be certified at the complaint stage is inconsistent with the interpretation of Rule 23 espoused in *Dukes*.

## II.      RESPONSE TO MOTION TO DISMISS FOR LACK OF STANDING

Much of Defendants' argument related to an alleged "lack of standing" is also cured by allowing substitution of the named plaintiff.  For example, Defendants' first argument about standing, related to the notion of "claim-splitting,"[10] is cured through the proposed substitution of Mr. Salverson as the named plaintiff.

Defendants also alleged that the Plaintiffs failed to allege a "cognizable injury or a threatened and imminent injury." [11] That concern is alleviated by the proposed amended complaint, which clearly alleges that the proposed substitute plaintiff, Mr. Salverson, has suffered injury:

- •      Plaintiff has been damaged as a result of Defendants' design, development, advertisement, marketing and sale of the Fittings; (¶ 2)

- •      Plaintiff and the class he seeks to represent have suffered damage as a result of owning homes and buildings with defective Fittings; (¶ 7)

- •      The failures of the Fittings have and will in the future cause water leaks.  These leaks have and will in turn cause extensive damage to other property including the homes and buildings and personal property of the owners and the leaching of impermissible amounts of lead into the potable-water-delivery systems; (¶ 8)

---

[8] 131 S.Ct. 2541 (2011).
[9] *Id.* at 2551.
[10] Defs.' Motion, 15-16.
[11] *Id.* at 16.

•      Defendants, the designers and manufacturers of the brass Fittings, specified or accepted the use of a high-zinc-content brass that is commonly referred to as "yellow brass" and held them out as suitable for use in potable water delivery systems in homes located Central and Southern Arizona, including but not limited to Maricopa, Pinal, and Pima Counties.  High-zinc-content brass, however, has long been known to suffer from de-alloying corrosion attack known as dezincification, which is an injury that happens to all high-zinc-content brass plumbing components when they are exposed to water. Plaintiff brings this action to seek relief from Defendants' defective product and to redress the injuries that it has caused to him and similarly situated owners of homes and buildings constructed in Central and Southern Arizona, including but not limited to Maricopa, Pinal, and Pima Counties; (¶ 10)

•      All of the owners of homes and buildings in Central and Southern Arizona, including but not limited to Maricopa, Pinal, and Pima Counties that contain or contained Defendants' F877 and/or F1807 Fittings have been injured as a result of the presence of these defective products.  Blatant manifestations of this defect have caused additional damages including, but not limited to loss of structural integrity and/or strength of the brass Fittings, weeping, leaks, blockages, restriction and/or reduction of water flow and/or pressure, loss of use and function of the plumbing system and related improvements and/or appliances, including the leaching of lead into the potable-water-delivery systems, resultant damage to the homes and buildings and the work of others (e.g., water loss, damage to framing, drywall and/or other building materials), resultant damage to water quality, economic losses including costs of maintenance and/or repair, and all reasonable fees, costs, interest and/or expenses associated therewith.  The damages are expected to increase over time as the defective F877 and/or F1807 Fittings continue to corrode.  The homes and buildings with the F877 and/or F1807 Fittings must be replumbed in order to ensure that use of this defective product has been completely abandoned and removed in those homes and buildings.  Plaintiff estimates that it will cost approximately $10,000 per residence; (¶ 15)

•      The degradation of the Defendants' Fittings has caused damage to Plaintiff's property other than the plumbing system sold by Defendants. For example, the dezincification process damages other components of the plumbing system not sold by Defendants like fixtures as well as appliances such as water heaters, ice makers, water treatment systems, dishwashers and clothes-washing machines by depositing damaging scale and buildup on those components and the leaching of impermissible amounts of lead into the potable-water-delivery systems; (¶ 50)

Clearly Mr. Salverson has alleged actual injury. And when Defendants ask him for proof in discovery, Mr. Salverson will provide concrete proof of injury. But Rule 8 does not require that a plaintiff provide *proof* in his complaint, such as photographs, engineering reports and other forms of evidence.  Plaintiff's allegations, at this stage, are sufficient.

Finally, Defendants attempt, but fail, to distinguish the *Waterfall* court's finding of standing based solely from the fact of dezincification.[12] That finding is on all fours with the instant case—Defendants' defective products cause damage and injury, even if physical property damage (such as burst pipes, flooding, etc.) has not yet manifested. Plaintiffs' complaint alleges that fact, and a Nevada jury has already found that fact to be true.[13] Defendants' arguments about lack of standing are without merit.

## III.   RESPONSE TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Like Defendants' other arguments, much of the analysis in Defendants' Motion pursuant to Rule 12(b)(6) is moot in light of Plaintiffs' proposed substitution and amendment. This is because Defendants' arguments turn in large part on Nevada law, which is no longer applicable to this case (should the Court grant Plaintiffs' request for substitution and amendment).[14] And, the proposed amended complaint has revised allegations to properly address Mr. Salverson's claim.[15]

Given that the underlying law governing this case will change if the Court grants Plaintiffs' request to substitute and amend, Plaintiffs are not opposed to Defendants having a final opportunity to file a Rule 12(b)(6) motion on the amended complaint which can occur contemporaneously with this case moving forward in discovery. Surely some of Mr. Salverson's claims have been adequately pleaded, and if that is the case, prosecution of his claims can occur in tandem with Defendants' efforts under Rule 12.

---

[12] Defs.' Motion, pg. 19, n. 3.

[13] *See* Request for Judicial Notice.

[14] Plaintiffs have also addressed many of these same Rule 12(b)6 arguments in their response to Defendants' previous motion to dismiss (See Doc. # 46), and such pleading is incorporated herein by reference.

[15] Several of Defendants' arguments are internally inconsistent or facially without merit and do not require detailed analysis. For example, Defendants argue that "alter ego" is not a claim, yet argue that Plaintiffs have not adequately plead that claim and that it should be dismissed. If it is not a claim, as Defendants suggest, then Plaintiffs' allegations related to "alter ego" are just more factual allegations that support Plaintiffs' other claims—it does not require the Court to strike the alter ego allegations.

## IV.    MOTION FOR LEAVE TO SUBSTITUTE PLAINTIFF AND AMEND COMPLAINT

As set forth above, Plaintiffs desire to substitute Mr. Salverson as the named plaintiff in their place, and amend the complaint to accurately reflect Mr. Savlerson's narrowed claims on behalf of some Arizona residents.

Pursuant to Fed.R.Civ.P. 15(a)(2), once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) directs the court to "freely give leave when justice so requires."

Here, Defendants cannot be heard to say that the requested amendment involves undue delay, bad faith or dilatory motive.[16] Indeed, not until receipt of the Court's February 27, 2013 order did Plaintiffs have the guidance necessary to allow them to decide that substitution of another plaintiff was proper, and that process took time to resolve. As to the propriety of Plaintiffs' request, there can be no doubt that courts typically allow substitution of class representatives. *See, e.g., Lindley v. Life Investors Ins. Co. of Am.,* Nos. 08–0379 & 09–0429, 2009 WL 2601949, at *4 (N.D. Okla. Aug. 20, 2009) ("If it becomes clear that class certification is appropriate but plaintiff is not a suitable class representative, ... a new class representative may be substituted."); *In re Aluminum Phosphide Antitrust Litig.,* 160 F.R.D. 609, 613 (D. Kan. 1995) ("If it later becomes apparent that certain types of purchasers are not adequately represented by the named representatives, the Court may require substitution or addition of a class representative...."); *Heartland Commc'ns, Inc. v. Sprint Corp.,* 161 F.R.D. 111, 115 (D. Kan. 1995) ("[I]f it later becomes apparent that Partners selling certain types of services are not adequately represented by the named representatives, the court may require substitution or addition of a class representative...."); *see also Lynch v. Baxley,* 651 F.2d 387, 387 (5th Cir.

---

[16] *See e.g., Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir.1993) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

1981) (holding that, after intervening circumstances deprived class representative of standing, "the district court erred in dismissing the case without giving members of the original class with live claims an opportunity to become plaintiffs by amendment of the complaint or by intervention and thereby save the subclass action" (internal quotation and citation omitted)).[17]

Magistrate Judge O'Hara recently ruled on a similar issue in *In re Motor Fuel Temperature Sales Practices Litigation.*[18] There, a named plaintiff sought substitution several years into the case, but before class certification was decided, due to factors that rendered the named plaintiff an inappropriate class representative.[19] After consideration of the facts and the appropriate legal standards, Magistrate Judge O'Hara granted the substitution, noting that courts in the Tenth Circuit have taken "a rather liberal approach in permitting the substitution of class representatives at various stages in the proceedings."[20]

The instant case is even more suited to an order granting substitution than the situation before Magistrate Judge O'Hara. Virtually no discovery has been completed in this case, there is no scheduling order in place and no trial date has been set. Because Plaintiffs have not unduly delayed this request, and because there will be no prejudice to Defendants if this request is granted, Plaintiffs respectfully suggest that substitution and amendment is proper.

WHEREFORE, Plaintiffs request an order consistent with the foregoing and for such other and further relief the Court deems proper.

---

[17] *See also* 1 Newberg on Class Actions § 2:17 (5th ed.) (collecting cases).
[18] Nos. 07–MD–1840–KHV.
[19] 2009 WL 3122501, * 2 (D.Kan. 2009).
[20] *Id.*

Dated: May 3, 2013.                          HORN, AYLWARD & BANDY, LLC

                                             ___/s/ Joseph A. Kronawitter___
                                             Robert A. Horn (KS Bar #70254)
                                             Joseph A. Kronawitter (KS Bar #19665)
                                             2600 Grand Boulevard, Suite 1100
                                             Kansas City, Missouri 64108
                                             Tel. (816) 421-0700

                                             James D. Carraway (Cal. Bar 143592 & Nev.
                                             Bar #7642)
                                             CARRAWAY & ASSOCIATES, LLC
                                             7674 W. Lake Mead Blvd., Suite 215
                                             Las Vegas, Nevada 89128
                                             Tel. (702) 632-1580

                                             J. Randall Jones (Nev. Bar #1927)
                                             KEMP, JONES & COULTHARD, LLP
                                             3800 Howard Hughes Parkway, 17th Floor
                                             Las Vegas, Nevada 89109
                                             Tel. (702) 385-6000

                                             Robert C. Maddox (Nev. Bar #4002)
                                             MADDOX, ISAACSON & CISNEROS, LLP
                                             3811 West Charleston Blvd. #110
                                             Las Vegas, Nevada 89102
                                             Tel. (702) 366-1900

                                             Scott K. Canepa (Nev. Bar #4556)
                                             CANEPA RIEDY & RUBINO
                                             851 South Rampart Blvd. #160
                                             Las Vegas, Nevada 89145
                                             Tel. (702) 304-2335

                                             Francis I. Lynch (Nev. Bar #4515)
                                             LYNCH, HOPPER, SALZANO & SMITH, LLP
                                             1640 Alta Drive, #11
                                             Las Vegas, Nevada 89106
                                             Tel. (702) 868-1115

                                             ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

*/s/ Joseph A. Kronawitter*_____