# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JIMMY and REGINA HULL,** individually and on behalf of those similarly situated, et. al., | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 12-2086-JAR-TJJ |
| v. | ) |
| **VIEGA, INC., et al.,** | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This putative class action arises out of the installation of allegedly defective high-zinc-content "yellow brass" plumbing fittings in residences throughout the United States. This matter is before the Court on Defendants' renewed Motion to Dismiss and Strike Pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6), (f) and 23 (Doc. 52), and Plaintiffs' Motion for Leave to Substitute Plaintiff and Amend Complaint (Doc. 60). In their response to Defendants' numerous grounds for dismissal, Plaintiffs, who are residents of Nevada, move to substitute a replacement named plaintiff and proposed class representative from Arizona, who will pursue claims only on behalf of Arizona residents, as set forth in the attached proposed Amended Complaint. Such amendment, Plaintiffs contend, will cure the majority, if not all, of Defendants' concerns regarding dismissal and certification. Defendants raise numerous objections to the request for leave to amend in their reply (Doc. 62), and the Court directed Plaintiffs to file a surreply to Defendants' objection to their request for leave to amend complaint. The matter is now fully briefed and the Court is prepared to rule. For the reasons explained in detail below, the Court

denies Defendants' Motion to Dismiss for lack of subject matter jurisdiction and grants Plaintiffs leave to amend.

I.      **Procedural and Factual Background**

Plaintiffs Jimmy and Regina Hull, Gilbert Meyer, Dorothy O'Brien, and Daniel Tessier, all residents of Nevada and owners of residential property in Las Vegas, filed this Rule 23 class action, individually and on behalf of over one thousand (1000) similarly situated owners of homes and buildings in the United States with plumbing systems utilizing Defendants' brass ASTM F877 and/or F1807 fittings (collectively "Fittings"), as well as any person or entity who paid for repairs or damage cause by the failure of the allegedly defective Fittings. Plaintiffs seek damages pursuant to the Kansas and Nevada Deceptive Trade Practices Act ("NDTPA") and similar statutes in other states, and Chapter 40 of the Nevada Revised Statutes ("NRS"),[1] based upon damage and potential future damage to class members' homes arising out of the failure or potential failure of "yellow brass" plumbing fittings and components manufactured by Defendants.

Plaintiffs name the following Defendants: (1) Vanguard Piping Systems, Inc., a Kansas corporation, which was succeeded by and merged with Viega, LLC; (2) Viega, Inc., a Delaware corporation that is the successor-in-interest by merger to Vanguard Industries, Inc. and Vanguard Piping Systems, Inc.; (3) Viega, LLC, a Delaware limited liability company that is the successor-in-interest by merger to Vanguard Piping Systems, Inc.; (4) VG Pipe, LLC, a Delaware corporation; (5) Vanguard Industries, Inc., the parent of Vanguard Piping Systems, Inc. before it

---

[1]Nevada law provides an exception to the economic loss doctrine for construction defect negligence claims where they are initiated under Chapter 40 of the NRS, which requires a claimant to provide written notice of the defects with an opportunity for potential defendants to inspect and repair. *See Olson v. Richard*, 120 Nev. 240, 243 (2004).

was merged with and sold to Viega, Inc.; (6) Viega International GMBH, a German company that is the parent company of Viega, Inc.; and (7) Viega GMBH & Co. KG, a German company.

The Complaint lists seven causes of action: (1) Breach of Implied Warranties of Fitness for Particular Purpose, Merchantability, Habitability, Quality and Workmanship; (2) Breach of Express Warranties; (3) Negligence, Negligent Misrepresentation, Failure to Warn/Instruct, Negligent Selection and Negligent Installation; (4) Strict Products Liability; (5) Declaratory and Equitable Relief; (6) Violation of NDTPA; and (7) Alter Ego.

Defendants moved to dismiss the complaint on multiple grounds, and also moved to strike Plaintiffs' class allegations on the grounds that it is evident from the face of the Complaint that, as a matter of law, Plaintiffs are unable to satisfy the requirements for certification under Rule 23. In their response, Plaintiffs acknowledged that Plaintiffs Meyer, O'Brien and Tessier are class members in a separate case filed in the District of Nevada, brought on these same claims against these same Defendants, and by the same Plaintiffs' counsel: *Waterfall Homeowners Ass'n v. Viega, Inc., et al.*, No. 11-cv-01498-RCJ-GWF ("*Waterfall*"). In that case, the plaintiffs are Nevada homeowners associations that represent their own 998 members directly, and seek to represent up to 10,000 homeowners associations representing up to 250,000 similarly situated homeowner members throughout the Las Vegas area via that class action.

On July 10, 2012, after Plaintiffs filed their response but before Defendants filed their reply, the *Waterfall* court issued an order adjudicating motions to dismiss and strike class action allegations filed by Defendants (the "*Waterfall* Order").[2] Defendants attached a copy of the

---

[2] 283 F.R.D. 571 (D. Nev. 2012).

Order to their response, and incorporate it into their arguments.[3] Defendants urged this Court to follow the favorable rulings in the *Waterfall* Order, to disregard the unfavorable rulings, and dismiss Plaintiffs Meyer, O'Brien and Tessier, whose presence in this suit allegedly violates the anti-claim splitting rule. Plaintiffs did not seek leave to file a surreply.

On February 27, 2013, this Court denied Defendants' motions without prejudice to renew.[4] In so ruling, the Court summarized the court's holdings in *Waterfall* and expressed concern regarding several problems with Plaintiffs' Complaint, including whether the action could ever meet the certification requirements of Fed. R. Civ. P. 23(b)(3), whether manageability concerns were posed by choice of law problems, whether Plaintiffs could extrapolate the Hulls' Chapter 40 Notice to the class homes in Nevada and nationwide, whether the class was acertainable, and whether Plaintiffs had engaged in claim-splitting, noting that many of the objections appeared to be curable by amendment.[5] Defendants renewed their motion to dismiss.[6] In response, Plaintiffs moved to amend their complaint to substitute a replacement named plaintiff and proposed class representative from Arizona, who will pursue claims only on behalf of Arizona residents, dropping the Nevada claims and plaintiffs as well as any potential nationwide class, which purportedly cures or renders moot Defendants' grounds for dismissal.[7]

On October 29, 2013, this Court entered an Order Staying Case pending the December 2, 2013 Fairness Hearing on a national class settlement in *Verdejo v. Vanguard Piping Sys. Inc., et*

---

[3]Doc. 38, Ex. A.

[4]Doc. 48.

[5]*Id*. at 7-10.

[6]Doc. 52.

[7]Doc. 60.

4

*al.*, Case No. BC448383 (L.A. Super.).[8] The parties subsequently notified the Court that the *Verdejo* national class settlement is "dead,"[9] and accordingly, the stay was lifted.[10]

## II. Standing and Leave to Amend

As a general rule, the court first addresses a motion for leave to amend because if leave is granted, the motion to dismiss the complaint is moot. Indeed, Plaintiffs have tacitly conceded most of Defendants' objections by filing a proposed amended complaint that cures or renders moot any deficiencies. In requesting leave to amend in their response to the motion to dismiss, Plaintiffs dispute that they lack standing, but admit that "[m]uch of Defendants' argument related to an alleged 'lack of standing' is also cured by allowing substitution of the named plaintiff." Defendants contend that because Plaintiffs have no standing to prosecute this action, they also lack standing to request leave to amend.

In class actions, where a named plaintiff's individual claims fail or become moot for a reason that does not affect the viability of the class claims, courts regularly allow or order plaintiff's counsel to substitute a new representative plaintiff.[11] However, while Rule 15(a) is to be liberally applied, it does not extend to cases where plaintiff's only reason for seeking amendment is to cure a standing defect. If Plaintiffs are without standing, then amendment would not be allowed, as a plaintiff "may not create jurisdiction by amendment when none

---

[8]Doc. 75.

[9]Docs. 77, 78.

[10]Doc. 80.

[11]*See Robichaud v. Speedy PC Software*, No. C 12 04730 LB, 2013 WL 818503, at *8 (N.D. Cal. Mar. 5, 2013) (collecting cases).

5

exists."[12] Where the only named plaintiff in a putative class action lacks standing from the outset of the case, and a class is yet to be certified, the proper course is dismissal.[13]

In this case, Plaintiffs' proposed amendment is offered to cure numerous objections raised in Defendants' Motion to Dismiss, ranging from standing to bars to class certification to failure to state a plausible claim. Accordingly, the Court will first address the standing issue raised in Defendants' Rule 12(b)(1) motion, as the request for leave to amend will not be permissible unless this Court has jurisdiction.

### III. Motion to Dismiss

Defendants argue in their Motion to Dismiss that Plaintiffs have divested themselves of standing by violating the anti-claim-splitting rule and that they lack Article III standing.

*Claim-Splitting*

Defendants first contend that Plaintiffs have violated well-established prohibitions on claim-splitting by seeking to recover in both this action and in *Waterfall*. Specifically, Dorothy O'Brien is a named plaintiff in the *Waterfall* action, Gilbert Meyer and Daniel Tessier are members of the Waterfall HOA, and Jimmy and Regina Hull are members of the putative class. Defendants urge that the filing of such duplicative actions, by the same plaintiffs' counsel, is

---

[12]*Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 115 (D. D.C. 1999), *aff'd*, 252 F.3d 1320 (Fed. Cir. 2001) (citations and internal quotations omitted); *see also Lierboe v. State Farm Mut. Auto. Ins.* Co., 350 F.3d 1018, 1023 (9th Cir. 2003) (holding lack of standing cannot be cured by amendment to substitute "another [class] representative"); *Almeida v. Google, Inc.*, No. C-08-02088 RMW, 2009 WL 3809808, at *2 (N.D. Cal. Nov. 13. 2009) ("[W]here the original named plaintiff lacks standing, a new plaintiff with standing cannot step in to save the lawsuit from dismissal.").

[13]*Stephenson Oil Co. v. Citgo Petroleum Corp.*, 271 F.R.D. 323, 344 (N.D. Okla. 2010) (citing *Lierboe*, 350 F.3d at 1022) (explaining "[B]ecause this is not a mootness case in which substitution or intervention might have been possible, we remand this case to the district court with instructions to dismiss."); 1 *Herbert B. Newberg on Class Actions* § 2:7 (4th ed. 2002) ("If the plaintiff has no standing individually, then no case or controversy arises. . . .").

prohibited under prevailing law and warrants dismissal of the action. Plaintiffs respond that their motion to amend to substitute Arizona resident Mr. Salverson as the named plaintiff was motivated by the Court's order questioning whether they had split their claims, that O'Brien is the only plaintiff named in both actions, and that the remaining Plaintiffs are not bound by any orders in the *Waterfall* action as the class has not been certified.

District courts have discretion to control their dockets by dismissing duplicative cases.[14] The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit.[15] By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste "scarce judicial resources" and undermine "the efficient and comprehensive disposition of cases."[16] Although Defendants characterize the issue as one of standing, the Tenth Circuit has noted that "more recent cases analyze claim-splitting as an aspect of res judicata."[17] Thus, the Court declines to address the issue at this time, and will limit its jurisdictional analysis to whether Plaintiffs have Article III standing.

---

[14] *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

[15] *Id.*

[16] *Id.* (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)).

[17] *Hartsel*, 296 F.3d at 986 (collecting cases).

*Standing*

Federal courts are courts of limited jurisdiction and, as such, must have a statutory or Constitutional basis to exercise jurisdiction.[18] A court lacking jurisdiction must dismiss the case, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[19] The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[20] "Thus, plaintiff bears the burden of showing why the case should not be dismissed."[21] Mere conclusory allegations of jurisdiction are not enough.[22]

Plaintiffs' standing is properly challenged by a Rule 12(b)(1) motion because a party's standing implicates subject matter jurisdiction.[23] Generally, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[24] "Second, a party may go beyond allegations

---

[18]*Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage,* 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.") (citations omitted).

[19]*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[20]*Montoya*, 296 F.3d at 955.

[21]*Harms*, 146 F. Supp. 2d at 1130.

[22]*United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[23]*Unicredit Bank AG v. Jue-Thompson*, No. 12-2468-EFM, 2013 WL 6185750, at *3 (D. Kan. Nov. 26, 2013) (citation omitted).

[24]*Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (citations omitted).

contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[25]

Defendants contend that Plaintiffs lack Article III standing because the Complaint fails to allege a "cognizable injury or a threatened and imminent injury." To establish Article III standing, a plaintiff must show: (1) injury in fact, (2) causation, and (3) redressability.[26] "To demonstrate an injury in fact, a plaintiff must demonstrate the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."[27] Furthermore, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."[28] Last, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[29] "[T]he injury must affect the plaintiff in a personal and individual way."[30]

---

[25]*Id.* at 1003 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325); *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

[26]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[27]*Id.* at 561.

[28]*Id.*

[29]*Id.*

[30]*Id.*

9

In a putative class action like this one, "named Plaintiffs who represent a class must allege and show that they have personally been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."[31] Here, Defendants both facially and factually attack the Complaint. First, Defendants argue that Plaintiffs simply allege damage solely "on information and belief" without alleging actual damage. In fact, Defendants argue, Plaintiffs fail to specifically allege a single fact related to an injury caused to them. Defendants argue that at most, Plaintiffs have alleged that certain components of their plumbing systems are corroding due to dezincification, which they contend is not manifestation of a defect.

In response,[32] Plaintiffs cite to allegations in the Complaint that they and class members

> own, have installed, or have paid for damages cause[d] by Defendants' defective Fittings that have already failed and are in the process of failing prematurely and thus have suffered or are reasonably certain to suffer actual injury well in advance of the warranted and expected life of the product. These damages include, without limitation, dezincification, corrosion, plumbing blockages, reduced and/or restricted water flow and water pressure, loss of function, loss of structural integrity, cracks, weeps, leaks, systems failures, damages to other property, appliances and components and the leaching of impermissible amounts of lead into the potable-water delivery systems.
>
> The degradation of the Defendants' Fittings has caused damage to Plaintiffs' property other than the plumbing system sold by Defendants. For example, the dezincification process damages other components of the plumbing system not sold by Defendants like fixtures as well as appliances such as water heaters, ice makers, water treatment systems, dishwashers and clothes-washing machines by depositing damaging scale and buildup on those

---

[31]*Lewis v. Casey*, 518 U.S. 343, 347 (1996).

[32]Plaintiffs refer the Court to their analysis presented in response to Defendants' first motion to dismiss. Doc. 27 at 3-7.

components and the leaching of impermissible amounts of lead
into the potable-water-delivery systems.³³

Plaintiffs contend that because they will rely on expert witnesses to prove injury and causation, such as Dr. Elliott's report cited by Defendants, it is appropriate for them to allege such injury and causation upon information and belief. Plaintiffs further invite the Court to adopt the standing ruling issued in the *Waterfall* Order.

In *Waterfall*, the defendants moved to dismiss on the grounds that the plaintiff homeowner associations did not have Article III "associational standing" to pursue the claims on behalf of their members, and that plaintiffs failed to show that they personally suffered an actual, concrete injury in fact.³⁴ The court agreed that plaintiffs lacked associational standing, but required individual plaintiffs to be substituted as named plaintiffs in lieu of dismissal.³⁵ The court rejected defendants' argument that plaintiffs failed to allege injury in fact because they simply alleged damage on information and belief, stating "[p]lantiffs have alleged damage. They have alleged that the parts are defective and have already begun to corrode in at least a few sample circumstances, even if they have not yet failed."³⁶

The Court agrees with *Waterfall* with respect to Defendant's facial challenge. Although the burden of establishing standing lies with the party asserting federal jurisdiction, the manner and degree of evidence necessary to meet this burden may vary depending on the stage of

---

³³Doc. 1, Complaint, ¶¶ 50-51.

³⁴283 F.R.D. at 579.

³⁵*Id.* at 579-80.

³⁶*Id.* at 580.

11

litigation.[37]  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice."[38]  "Standing merely requires a redressable injury that is fairly traceable to [a defendant's] conduct.  Whether a plaintiff can recover for that injury under a particular theory of liability is a separate question."[39]  Here, the Complaint alleges that Plaintiffs and putative class members have been injured because they own homes that contain allegedly defective plumbing fixtures manufactured by Defendants that are manufactured from high-zinc content brass that will leave them susceptible to dezincification when exposed to water, which in turn, has or is reasonably certain to lead to corrosion, plumbing blockages, and other damage.  Thus, accepting Plaintiffs' allegations as true, they have sufficiently alleged a present or future injury resulting from the allegedly defective yellow brass fittings.

As Defendants note, however, the *Waterfall* Order did not analyze whether the plaintiffs' complaint survived a factual, as opposed to a facial, challenge to standing.  Here, Defendants make a factual challenge to Plaintiffs' standing by arguing that they have not suffered an actual injury because no fittings have failed.  In support of their challenge, Defendants request the Court take judicial notice of the Hulls' NRS Chapter 40 Notice and Expert Report of Dr. Peter Elliott.[40]  Defendants assert that while alleging the Hulls' pipes evidence dezincification, Dr. Elliot's report confirms that they have not experienced any harm, and merely opines that the

---

[37]*Lujan*, 504 U.S. at 561.

[38]*Id*. (citations and quotations omitted).

[39]*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, Products Liability Litigation*, 744 F. Supp. 2d 1145, 1161 (C.D. Cal. 2010).

[40]Doc. 54, Ex. B.

12

Hulls' fittings may fail at some undefined point in the future.[41]  Defendants argue that because Plaintiffs have not provided affirmative proof of standing, they cannot survive this factual challenge.[42]  Defendants are correct that when standing is challenged by contesting the allegations in the pleadings by presenting evidence, the court must permit the plaintiff to respond with evidence supporting jurisdiction.[43]  However, "[i]f the plaintiff does not meet and controvert the defendant's factual assertions by affidavits or other sworn proofs, then the district court must determine whether it has subject matter jurisdiction based on the factual context presented by the defendant."[44]

In this case, Plaintiffs allege that the yellow brass fittings installed in their home have failed or will soon begin to fail.  Dr. Elliott's report identifies fittings harvested from the Hulls' house as displaying active dezincification corrosion that are failing due to that alleged defect, and are vulnerable to localized cracking and total failure before reaching their designed and expected useful life.[45]  An injury-in-fact for standing purposes may be "the possibility of future injury."[46]  The Tenth Circuit has held that the threat of future harm is sufficient if the threatened

---

[41]*Id.*

[42]In an apparent attempt to offer evidence in support of Defendants' factual challenge, Plaintiffs request the Court take judicial notice of the jury verdict in the case of *Avertine-Tramonti Homeowners Association v. Vanguard Piping Systems, Inc.*, *et al.*, where a Nevada state court jury awarded damages to plaintiffs based on their product liability claims regarding yellow brass fittings. Doc. 60, Ex. 1. Plaintiffs do not explain how this reference to a jury determination in a separate state court proceeding establishes their Article III standing in these proceedings.

[43]*Holt*, 46 F.3d at 1003.

[44]*Int'l Ass'n of Machinists & Aerospace Workers v. N.W. Airlines, Inc.*, 673 F.2d 700, 711-12 (3d Cir. 1982).

[45]Doc. 54, Ex. B. at 10-13.

[46]*Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (quotation omitted).

13

injury is "certainly impending and not merely speculative," as well as "real and immediate."[47] The Court finds that this threat of injury is credible and immediate for Article III standing purposes and that, for jurisdictional purposes, at least the Hull Plaintiffs have an injury-in-fact.[48]

Based on the record before it, the Court finds that named Plaintiffs Jimmy and Regina Hull have met their burden to establish standing for jurisdictional purposes, and accordingly, Defendants' motion to dismiss shall be denied with respect to those Plaintiffs; because the only evidence before the Court is Dr. Elliott's report on the Hulls' residence, Defendants' motion is granted with respect to the remaining named Plaintiffs.[49]

## IV.     Motion for Leave to Amend

Parties may amend pleadings "once as a matter of course" before trial if they do so within 1) twenty-one days of serving the pleading or 2) "if the pleading is one to which a responsive pleading is required," twenty-one days of service of a responsive pleading or a motion under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier.[50] Other amendments before trial are allowed "only with the opposing party's written consent or the court's leave."[51] Courts "should freely

---

[47] *Tandy v. City of Wichita*, 380 F.3d 1277, 1283-84 (10th Cir. 2004).

[48] *See Baker v. Castle & Cook Homes Haw., Inc.*, No. 11-00616 SOM-RLP, 2012 WL 1454967, at *3-4 (D. Haw. Apr. 25, 2012) (addressing similar standing challenge to a putative class action against Zurn Industries by homeowners who alleged a construction defect involving yellow brass plumbing fittings).

[49] *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) (explaining that there must be at least one named plaintiff or lead plaintiff with standing to assert a claim in a class action).

[50] Fed. R. Civ. P. 15(a)(1).

[51] Fed. R. Civ. P. 15(a)(2).

give leave when justice so requires."[52] Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"[53]

Courts may deny leave to amend, however, based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[54] "Absent flagrant abuse, bad faith, futility of amendment, or truly inordinate and unexplained delay, prejudice to the opposing party is the key factor in deciding a motion to amend."[55] In fact, the prejudice factor is the "most important" consideration in the decision.[56] Typically, courts "find prejudice only when the amendment unfairly affects a party's ability to prosecute or defend the lawsuit.[57] This most often occurs when the amendment "raise[s] significant new factual issues" or arises from a different theory or subject matter than previously asserted.[58] To justify denying leave to amend, the proposed amendment must "work an injustice" to an opposing party.[59] The party opposing the amendment has the burden to show

---

[52] *Id.*; *accord Forman v. Davis*, 371 U.S. 178, 182 (1962).

[53] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[54] *Id.* (quoting *Forman*, 371 U.S. at 182).

[55] *Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1307 (D. Kan. 2006).

[56] *Minter*, 451 F.3d at 1207.

[57] *Id.* at 1208.

[58] *Id.*; *accord Acker v. Burlington N. & Santa Fe R.R. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003) (stating that prejudice means undue difficulty in prosecuting or defending a lawsuit due to "a change of tactics or theories on the part of the other party") (quoting *Helsop v. UCB, Inc.*, 175 F. Supp. 2d 1310, 1313 (D. Kan. 2001)).

[59] *United States v. Sturdevant*, No. 07-2233-KHV-DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008) (quoting *Koch v. Koch Indus.*, 127 F.R.D. 206, 209–10 (D. Kan. 1989)).

a basis for denial.[60]

Whether to allow a proposed amendment, after the permissive period, addresses the sound discretion of the court.[61] "In exercising its discretion, the court must be mindful that the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities."[62]

Plaintiffs' proposed amendment is specifically offered to cure numerous objections raised in Defendants' Motion to Dismiss, ranging from standing, to bars to class certification, to failure to state a claim. Defendants oppose leave to amend on numerous grounds. The Court has determined that Plaintiffs Jimmy and Regina Hull have standing, and therefore, they have standing to seek leave to amend. The Court discusses the remaining objections in turn.

A.     **Timeliness/Delay**

Courts in this district consider the timeliness of a motion to amend when determining whether to grant leave to amend.[63] Undue delay alone is sufficient to deny a motion to amend; there need not be a showing of prejudice.[64] In the Tenth Circuit, undue delay may be found "when the party filing the motion has no adequate explanation for the delay."[65] The Court may

---

[60]*See, e.g., Acker*, 415 F.R.D. at 654 (prejudice); *Carefusion 213, LLC v. Prof'l Disposables, Inc.*, No. 09-2616-KHV-DJW, 2010 WL 4004874, at *5 (D. Kan. Oct. 12, 2010) (futility).

[61]*See Forman*, 371 U.S. at 182; *Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010); *Minter*, 451 F.3d at 1204.

[62]*Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 507 (D. Kan. 2007).

[63]*See Lara v. Unified Sch. Dist. No. 501*, No. 06-4145-RDR,, 2008 WL 920596, at *4 (D. Kan. Apr. 3, 2008) (quoting *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) for the statement "While Rule 15(a) provides that leave to amend 'shall be freely given when justice so requires,' if there has been undue delay on the part of the plaintiff in raising the claim, the district court may properly deny the motion as untimely.").

[64]*See, e.g., Cuenca v. Univ. of Kan.*, 205 F. Supp. 2d 1226, 1229–30 (D. Kan. 2002).

[65]*Minter*, 451 F.3d at 1206.

also deny leave to amend if the moving party "knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint."[66] Moreover, motions for leave to amend are correctly denied

> when it appears that the plaintiff is using Rule 15 to make the complaint "a moving target"... "to salvage a lost case by untimely suggestion of new theories of recovery," present "theories seriatim" in an effort to avoid dismissal, or to "knowingly delay[ ] raising [an] issue until the eve of trial."[67]

While liberality of amendment is important, it is equally important that "there must be an end finally to a particular litigation."[68]

In this case, Plaintiffs filed their original Complaint in February 2012; Defendants' Motion to Dismiss was filed shortly thereafter, and was denied without prejudice in February 2013. Defendants refiled that motion in March 2013, to which Plaintiffs responded with a Motion for Leave to Amend. Although Defendants claim that Plaintiffs waited "nearly a year and a half" to seek leave to amend, the Court declines to deny leave to amend on this basis alone. Defendants have not answered Plaintiff's Complaint, no discovery has been done, no scheduling order has been entered, and there has been no deadline established in the case for filing a motion for leave to amend. While this is largely due to the fact that the motion to dismiss has been pending for so long, due in part to a months-long stay advocated by Defendants, postponing a scheduling conference that would establish such a deadline, it is nonetheless important because Plaintiffs are still technically within the window of time to amend. Moreover, putative plaintiff

---

[66]*Cuenca*, 205 F. Supp. 2d at 1230.

[67]*Minter*, 451 F.3d at 1206 (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998); *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001); *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir.1994); *Walters v. Monarch Life Ins. Co.*, 57 F.3d 899, 903 (10th Cir. 1995)).

[68]*Pallottino*, 31 F.3d at 1027.

17

Salverson's claims, and the claims of the Arizona property owners alleged in the proposed amended complaint, are a sub-class of the nationwide class requested by Plaintiffs in their original Complaint, albeit one not specifically identified. Finally, the Court notes that the authority cited by Defendant in support of their untimeliness argument is distinguishable, as the plaintiff in that case waited until after the court granted summary judgment before seeking leave to amend, while no adjudication on the merits had been made in this case.[69]

### B. Prejudice and Bad Faith

Under Rule 15(a), undue prejudice means undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant.[70] "Any amendment invariably causes some 'practical prejudice,' but leave to amend is not denied unless the amendment would work an injustice to the defendants."[71] Courts have found that undue prejudice often "occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."[72]

Here, the Court is not persuaded that Defendants will suffer "undue difficulty" defending this case if leave to amend is granted. While the original Complaint focused on Nevada and Kansas consumer protection laws and statutes, the putative class was a nationwide class potentially involving numerous sub-classes and state laws. The proposed amended complaint significantly narrows that class to Arizona residents, with claims that arise from the same

---

[69]*See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785 (10th Cir. 1998).

[70]*Minter*, 451 F.3d at 1208; *Jones v. Wildgen*, 349 F. Supp. 2d 1358, 1361 (D. Kan. 2004) (citations omitted).

[71]*Koch v. Koch Indus.*, 127 F.R.D. 206, 209-10 (D. Kan. 1989) (citations omitted).

[72]*Minter*, 451 F.3d at 1208.

conduct by Defendants, involving the same allegedly defective products made by Defendants. Thus, the amended claims will not prejudice Defendants by bringing new legal theories or facts; if anything, Defendants will benefit from the amendment by the significant reduction of the putative class and resulting potential exposure. Moreover, although this case was filed in 2012, it remains in the initial stages. Discovery has not commenced, and no scheduling conference or trial date has been set.

The Court is similarly unpersuaded that Plaintiffs' request for leave to amend evidences bad faith conduct. Certainly, Plaintiffs could have sought leave in the interim before Defendants' renewed motion to dismiss was filed. That Plaintiffs waited until a renewed motion was actually filed that addressed flaws and issues raised by the Court does not rise to the level of bad faith, counsel's interpretation of a conversation about "mistakenly named plaintiffs" notwithstanding.

Finally, Defendants request in a footnote to their reply brief that in the event the Court permits Plaintiffs to amend their Complaint, it affirmatively state that such an amendment does not relate back.[73] Defendants argue that because Plaintiffs seek to commence an entirely new action with a new plaintiff, new class, and new operative law, relation back principles do not apply. Because this issue was raised in a footnote, and not clearly encompassed by the Court's order limiting Plaintiffs' surreply to Rule 15(a) issues raised by Defendants, the Court declines to address this issue at this time.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss and Strike (Doc. 53) is DENIED in part with respect to named Plaintiffs Jimmy and

---

[73]Doc. 62 at 15 n.5.

Regina Hull, and GRANTED with respect to the remaining named Plaintiffs on grounds of lack of subject matter jurisdiction; and DENIED as moot with respect to Defendants' remaining grounds;

**IT IS FURTHER ORDERED THAT** Plaintiffs' Motion for Leave to Substitute Plaintiff and Amend Complaint (Doc. 60) is GRANTED.

**IT IS SO ORDERED.**

Dated: March 6, 2014

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE